SMITH v. ESTES, *Appellant.*

1.   **Probate of Will.**   Probate of a will can only be granted by the court.   Proof may be taken by the clerk or a judge of the court, but subject to confirmation or rejection by the court.   Unless there is a confirmation, appropriately evidenced by an order to that effect, the will is not probated.

2.   **Specific Performance:** EQUITY: WILL.   In an action to compel specific performance of a contract to convey land, it appeared that the land was part of an estate held by the defendant under a will, by the terms of which defendant was invested with absolute power of disposal over it, but was directed to divide the entire estate equally among the testator's children, of whom plaintiff was one.   The defense was that plaintiff had already received more than her share. *Held,* that evidence in support of this allegation should have been received, and if it was established, the decree prayed should only be granted upon condition, either that plaintiff refund the excess received, or that the excess remain a charge and lien on the land.

*Appeal from   Camden   Circuit   Court.*—HON. G. W. MILLER, Judge.

REVERSED.

*John   W.   Moore* and *L.   C.   Krauthoff* for appellant.

*Nixon & Wallace* for respondents.

SHERWOOD, C. J.—The basis of this proceeding for specific performance was the alleged will of Jno. G. Estes, in substance, as follows:   " Know all men, That I, John G. Estes,   *   *   do ordain and make this, my last will and testament, as follows;   1st.   That my funeral expenses and all just debts be paid as soon as the same can be done, my debts being few and small.   2nd.   That to my beloved

wife, Lucy Estes, I give the full management of all my estate, both real and personal, to sell and dispose of any and all my property, to collect debts and receipt for the same, to sue and be sued, in fact, to do everything that I could do were I alive, for the benefit of herself and my lawful heirs ; that she shall have full control only during her natural life or widowhood. 3rd. That my children, each and every one of them, shall have an equal portion of property or money, or both, when they become of age, or as near as the same can be done, and that whatever they receive be charged to them, so that at the death or marriage of my wife, the property may be distributed equally among them or their heirs, and the property so charged against them, or money, shall be counted in as so much of their parts of my estate, so that each one of my children, namely : Mary G. Smith, formerly Mary G. Estes, Lucy D. Estes, Andrew Estes, James D. Estes, Susannah Estes, Zilpha Estes and Penelope Estes, shall have an equal portion of my property in the final distribution thereof. The property or money given to my children when they shall have become of age, that is, the amounts thereof, is left to the discretion of my wife, Lucy Estes. To Mary G. Smith, formerly Mary G. Estes, I have given sundry kinds of property, amounting to $229, and to Lucy Estes, my child, sundry kinds of property, amounting to $120 worth, which will be found charged and most of the items named ; and whatever any of my children, at the time they become of age, receive, shall likewise be charged."

The defendant was the donee of the powers conferred by the will, and as such had taken out letters *cum testamento annexo*. The petition charges that she had contracted with plaintiffs that she would convey the lands in controversy to them if they " would move on to and make their home upon the said lands, and improve the same," but the answer denies this.

1.

The alleged will was improperly admitted in evidence. The probate of a will is a judicial act, and if the clerk of the county court, or the judge of such court, takes proof of a will in vacation, such proof is taken " subject to the confirmation or rejection by the court;" 2 Wag. Stat., 1366, § 13; R. S. 1879, § 3972; and unless such subsequent confirmation occurs, and is appropriately evidenced by an order to that effect, there is no sufficient evidence that the will has been duly admitted to probate.  *Creasy v. Alverson*, 43 Mo. 13; *Jourden v. Meier*, 31 Mo. 40; *Charlton v. Brown*, 49 Mo. 353.

II.

Passing, however, from this preliminary question to the heart of the cause, did the defendant, under the facts detailed in evidence, and offered to be proven, derive such authority from the instrument heretofore quoted, as to warrant her in making, or at all events, the court in decreeing specific execution of the contract whereon the plaintiffs rely ?   We are not of that opinion, and for these reasons : As before stated, the answer denies the contract.   There was no testimony offered to establish that such an agreement was made.   The only thing making any approach in that direction, was the testimony of plaintiff, Mary G. Smith, that " we never had any contract in writing, with Mrs. Estes, for the land in controversy."   If there was any contract of that character, resting in parol, no witnesses testified to it, and it surely will not do in the face of a positive denial to infer that there was a verbal, for the simple reason that there was no written contract.   On this point, alone, the decree should meet with reversal, as devoid of basis on which to rest.

We take it as evident from the third paragraph of the instrument under discussion, that the central idea of the decedent was the ultimate equality of distribution of his es-

tate among his children. To this end he recites the amounts already advanced to and charged against two of them; to this end also, he requires " that whatever they receive be charged to them, so that at the death or marriage of " his wife, " the property may be distributed among them or their heirs, and the property so charged against them, or money, shall be counted in as so much of their parts of " his " estate, so that each one of " his " children (naming them) shall have an equal part of " his " property in the final distribution thereof." We think the testimony greatly preponderates in favor of the view that the tract of land in controversy was worth more than the distributive share of Mary G. Estes, and this estimate of the value of that tract leaves out of consideration the amount of property already advanced to her in the life-time of her father, $229. But even if the view just taken be not correct—even if the value of the land as to which specific performance is asked, does not, even when added to the property already received by Mary G. Smith, do more than exceed in value her distributive share, still the evidence was unquestionably admissible that defendant had, in addition to the tract in question and other property advanced to her daughter from her father's estate, the sum of $1,915. And this is especially the case, when we consider that at the hearing of the cause there were six of the children living; that it does not appear from the testimony, what, if any, was the personal estate of the decedent yet remaining, and that all the land whereof he died seized, did not, according to the testimony of Mary G. Smith, herself, amount in value to more than $6,000, when they moved on to the tract in controversy. So that if the testimony of the mother offered, but rejected, be true, Mary G. Smith had already received ($229+$1,915)=$2,144 from her father's estate, and still desired another slice thereof, amounting in value, according to the testimony of witness A. A. Russell, to the sum of $900, when the plaintiff moved upon the tract in litigation.

As this cause may, on its return to the court from whence it came, be reheard, the preliminary objections already mentioned having been overcome, it may be well enough to say that if it should turn out in evidence that, aside from the particular tract, plaintiff, Mary G. Smith, has received more than her due and ultimate proportion of the estate, it will be proper to deny to her specific performance, except upon equitable terms; either that she do refund whatever excess she may have received, at a day to be fixed, or that specific performance be granted, but upon the terms, to be imposed by the decree granting it, that such excess do remain a charge and lien on the land so decreed, in favor of those beneficially interested, such a decree being in emphatic accordance with the maxim, "He who seeks equity must do equity." 1 Story Eq. Jur., §§ 640, 692; *Cholmondeley v. Clinton*, 2 Mer. 171; 2 J. & W. 1; *Whelan v. Reilley*, 61 Mo. 565, and cases cited. The judgment is reversed and the cause remanded. All concur.