James Stanley CLEMONS, Appellant,

v.

Clifford Lee BECKER, Respondent.

No. 44811.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1955.

Robert A. McIlrath, Flat River, for appellant.

Dearing & Richeson, Will B. Dearing, Hillsboro, for respondent.

WESTHUES, Judge.

James Stanley Clemons filed suit against Clifford Lee Becker to recover $15,000 in damages for personal injuries alleged to have been sustained as a result of a collision of two automobiles. Plaintiff Clemons charged that Becker's negligence caused the collision and plaintiff's injuries. A trial resulted in a jury verdict for the defendant and from the judgment, plaintiff appealed.

The evidence as to the collision supports the following statement of the case: On the morning of April 1, 1954, plaintiff Clemons and his brother Robert were going to work in a car driven by Robert. While they were going in an easterly direction over Loughborough Road about five miles from Elvins, Missouri, their car, a Plymouth, collided head on with a Buick car being driven westwardly by the defendant Becker. The collision occurred about midway of a curve in the road. The roadway was hard surfaced with "black top" 18 feet wide. There was no center line marked on the roadway. Plaintiff and his brother Robert testified at the trial. They were both injured and it may be inferred from evidence that neither remembered anything of importance concerning the collision or how it occurred. To illustrate, we quote from Robert's evidence:

"Q. As you entered that curve from the west towards Elvins, coming towards Doe Run, how far could you see? A. Well, I could see up to where the curve cut me off, I don't know.

"Q. Would you say that is a hundred feet or more, Mr. Clemons? I have never been there; I just don't know. Would you say it is a hundred feet? A. Yes, it is a hundred foot from the scene where the accident occurred.

"Q. From where you first entered that curve on the west side of it, coming towards Doe Run, how far could you see toward the east? A. Well, I don't know exactly. I would say a hundred foot or so or better.

"Q. Were you looking straight ahead as you were driving, Mr. Clemons? A. I suppose so. I don't—

"Q. Do you ordinarily do that, look ahead, when you are driving? A. Yes.

"Q. And you never did see Mr. Becker's automobile? A. I never saw his car, no.

"Q. Are you able to tell this jury what the position of this car was right before the accident? A. No.

"Q. I mean by that were you to the right of the center line or do you know where you were? A. I don't know where I was.

"Q. Do you know where Mr. Becker's car was? A. I never saw Mr. Becker's car."

Plaintiff gave the following evidence as to what he remembered of the occurrence in question:

"Q. Now, you were going through Doe Run and down to Mine LaMotte, is that right? A. Yes, sir.

"Q. Will you tell just what you did as you were going out there, as much as you remember of it. A. I remember being at the house. I remember getting up—I mean, getting in the car and setting my dinner bucket down between my feet and going out the road, and I remember going out the road there a ways, and I rolled the window down and had to spit. I got a weak stomach. I was kind of sick that morning. I had to spit. That is the last thing I remember. When I woke up, I was back in Elvins going to the hospital in Penberthy's car."

The defendant Clifford Lee Becker was also injured but he testified that he remembered what occurred up to the time immediately before the collision. Note his testimony:

"Q. As you entered that curve, Mr. Becker, can you tell his Honor and lady and gentlemen of the jury what the position of your automobile was on that highway with reference to the center line or the righthand side? A. Well, I was driving, I would say, about a foot-and-a-half of the shoulder and proceeded on around that curve a foot-and-a-half from the shoulder.

"Q. Your testimony is that the right side of your car was about a foot-and-a-half from—A. (Interrupting) A foot-and-a-half from the shoulder of the road, as I entered that curve and proceeded around it.

"Q. Did you remain about a foot-and-a-half from the shoulder as you proceeded around that curve? A. Yes, sir, I held that position, yes, sir.

"Q. Did you see this other vehicle or some part of it coming towards you? A. When I come around the sharp part of that curve, the way my view on the highway, on the road, was, the parking light on the Plymouth on the lefthand fender come into my view.

"Q. Would you say it was directly in front of you? A. I would say directly in front of me, yes, sir.

"Q. What did you do when you saw that, Mr. Becker? A. Applied my brakes immediately.

"Q. And did the crash occur then? A. I suppose. I don't remember. I was knocked unconscious, and I suppose—

"Q. Are you able to help us out and help this jury out as to the position of your car with reference to the right-hand side when this object came into your view in front of you? A. I would say I was a foot-and-a-half of the shoulder on the righthand side of the road.

"Q. You applied your brakes and it happened? A. That it happened; that is all."

A State Highway Patrolman testified that when he arrived on the scene (about 6:50 a. m.) he found the two cars locked together head on about the center of the roadway; that the right front wheel of defendant's Buick was 5 feet south of the north edge of the black top roadway, while the right rear wheel was 3 feet 6 inches south thereof; that the left front wheel of the car (Plymouth) in which plaintiff was riding was 7 feet south of the north edge of the black top and the left rear wheel was 8 feet south of the north edge.

The above narration contains substantially all of the evidence submitted to the trial jury upon which to base a verdict. As above noted, the jury found for the defendant.

Plaintiff's "Points and Authorities" are:

"I. There is insufficient evidence to support the verdict. (citing authorities)

"II. An instruction which is broader than the pleadings or the proof is defective. (citing authorities)

"III. The omission of an essential element from an instruction is error." (citing authorities)

██ The first point may be disposed of readily. A verdict for a defendant on a plaintiff's claim needs no supporting evidence. A pleader seeking affirmative relief must produce evidence to support his claim. The party denying liability need not introduce any evidence to support a verdict. That rule of law needs no citation of authority. Plaintiff in his argument in the brief says, "If, as defendant states, the Plymouth automobile was directly in front of him when he saw the parking lights on the car, then it is apparent that he, as well as the Plymouth automobile, were both in the center of the highway. It would be impossible for the defendant to drive both in the center of the highway and within a foot and a half of the right hand curb, and therefore his statement cannot be true and is contrary to the physical facts." Plaintiff's argument in substance is that the physical facts disprove defendant's evidence and therefore plaintiff was entitled to a verdict. We hold that the evidence presented a question of fact for a jury to determine. We cannot say as a matter of law that the position of the cars after the collision conclusively disproved defendant's evidence. Especially is this true since no witness to the collision remembered precisely the position of the cars at the time of the impact. Had the trial court sustained plaintiff's motion for a new trial on the ground that the verdict was against the weight of the evidence, we would be confronted with a different situation. Reichmuth v. Adler, 348 Mo. 812, 155 S.W.2d 181, loc. cit. 182(1, 2).

The other two points do not present any question for review since they fail to comply with our Rule 1.08, 42 V.A.M.S. Our Rule 1.08(a) (3) requires an appellant in his brief to state "The points relied on, which shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous, * * *." It is apparent that plaintiff failed to comply with this rule. It is not sufficient to state in the argument in the brief the points relied on or to assign errors alleged to have been committed by the trial court. That must be done under "Points and Authorities." We would be justified in not considering the case further. However, in the interest of justice, we have decided to consider plaintiff's printed argument to ascertain his complaints. In this argument plaintiff contends the defendant did not plead that the collision in this case was the result of the negligence of a third party and, therefore, the defendant was not entitled to such a defense. In the case of Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, loc. cit. 750(7, 8), we ruled this question against plaintiff's contention. It was there held that a defendant under a general denial was entitled to show that he was not negligent and that the injury of plaintiff was caused solely through the negligence of another.

In the argument plaintiff says further that defendant's instruction omitted the element that the negligence of Robert O. Clemons, driver of the car wherein plaintiff was riding, could not be imputed to the plaintiff. This point has also been decided against plaintiff's contention. See Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54, loc. cit. 58, 59(4); Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, loc. cit. 64(6); and Mendenhall v. Meyer, 347 Mo. 881, 149 S.W.2d 366. Those cases ruled that a defendant need not include the element of imputed negligence in a sole cause instruction.

We find no merit in plaintiff's contentions. The judgment is affirmed.

All concur.